**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------X

RAHMEANE GREER,

Plaintiff,

- against –

MEDRITE, LLC, STAFFING BOUTIQUE, INC., and CHRISTOPER FIGUEROA-SCHRIER, *individually,*

Defendants.

------------------------------------------------------------X

Civil Act. No. 1:26-cv-02152

**PLAINTIFF DEMANDS A TRIAL BY JURY**

**COMPLAINT AND DEMAND FOR TRIAL BY JURY**

Plaintiff RAHMEANE GREER (hereinafter referred to as “Plaintiff” and/or “Mr. Greer”), by and through his attorneys, DEREK SMITH LAW GROUP, PLLC, hereby complains of Defendants MEDRITE, LLC (hereinafter referred to as “Medrite”), STAFFING BOUTIQUE INC. (hereinafter referred to as “Staffing Boutique”), and CHRISTOPHER FIGUEROA-SCHRIER (hereinafter referred to as “Schrier”) (hereinafter collectively referred to as “Defendants”), upon information and belief, as follows:

**NATURE OF THE ACTION**

1. Plaintiff Rahmeane Greer brings this action to redress Defendants’ unlawful employment practices, including sexual harassment, hostile work environment, discrimination on the basis of sex, gender, and sexual orientation, retaliation for engaging in protected activity, and wrongful termination in violation of the New York State Human Rights Law, N.Y. Exec. Law § 296 et seq. (“NYSHRL”), and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107 et seq. (“NYCHRL”).
2. Plaintiff was a caseworker employed by Defendants at Medrite’s emergency shelter in Queens Village, New York. He was sexually assaulted by a coworker on Defendants’ premises,

reported the assault through proper channels, received written confirmation from Defendants' Director of Behavioral Health that the conduct was "unacceptable" and that an investigation would be opened, and he was then suspended and terminated (not the perpetrator) within a mere twelve days of his complaint, on the pretextual basis that Plaintiff had been drinking on the job.

3. Plaintiff seeks compensatory damages, punitive damages, back pay, front pay, lost benefits, emotional distress damages, attorneys' fees, costs, declaratory and injunctive relief, and all other relief this Court deems just and proper.

## JURISDICTION AND VENUE

4. This is an action for monetary damages and all other appropriate relief as deemed by the court, pursuant to the varying tort claims herein under New York State Law.
5. Jurisdiction of this action is also conferred upon the Court as this action involves Diversity of Citizenship under 28 U.S.C. §1332.
6. For the purposes of this filing, Plaintiff RAHMEANE GREER is a citizen of the State of Maryland.
7. For the purposes of this filing, Defendant MEDRITE, LLC is incorporated and has its principal place of business within the State of New York.
8. For the purposes of this filing, STAFFING BOUTIQUE INC. is incorporated and has its principal place of business within the State of New York.
9. For the purposes of this filing, Defendant CHRISTOPHER FIGUEROA-SCHRIER is believed to be a citizen of the State of New York.
10. The matter in controversy exceeds $75,000.

11. In accordance with the Federal Rules of Civil Procedure, venue is proper in this district based upon the fact that a substantial part of Defendant Gross' unlawful and immoral actions in violation of Plaintiff's body occurred within the Southern District of New York. Furthermore, Defendant Gross was and still is believed to be located in this judicial district, including ownership of a secondary residence within New York City. In sum, a substantial part of the events or omissions giving rise to this action, including the unlawful assault and battery alleged herein occurred in this district.

12. Prior to commencing this action, Plaintiff filed a timely Charge of Discrimination with the United States Equal Employment Opportunity Commission (EEOC Charge No. 520-2024-07394) on or about July 23, 2024. Following its investigation, the EEOC issued a Letter of Determination and Notice of Right to Sue, finding that Plaintiff established a prima facie case of employment discrimination and that Defendant Medrite's complete failure to respond to the investigation constituted an admission of the allegations and warranted an adverse inference. All administrative prerequisites to suit have been satisfied.

## PARTIES

13. At all times material, Plaintiff RAHMEANE GREER is an individual gay man residing in Queens, New York City, New York.

14. At all times material, Defendant MEDRITE, LLC ("Medrite") is a domestic limited liability company existing under the laws of the State of New York doing business at 235-69 Hillside Avenue, Queens Village, New York 11426. Medrite operated an emergency shelter primarily serving recent immigrant asylum seekers.

15. At all times material, Defendant STAFFING BOUTIQUE INC. ("Staffing Boutique") is a domestic business corporation with its principal place of business at 99 Hudson Street, 5th Floor, New York, New York 10013.

16. At all times material, Defendants Medrite and Staffing Boutique were joint and/or sole employers of Plaintiff within the meaning of the NYSHRL and NYCHRL. Medrite controlled the terms, conditions, and daily operations of Plaintiff's employment, while Staffing Boutique controlled payroll, tax withholding, and the formal employment relationship. Together, they are co-employers jointly and severally liable for the unlawful conduct alleged herein.

17. In working in tandem, Defendants not only permitted Plaintiff to work, Defendants further shared an economic interest in the Queens Village location in which Plaintiff worked and jointly benefitted from Plaintiff's work. Furthermore, Defendants had functional and/or formal control over the terms and conditions of Plaintiff's work including but not limited to determining Plaintiff's rate and method of compensation and direction of Plaintiff's day-to-day work activities.

18. At all times material, Defendant CHRISTOPHER FIGUEROA-SCHRIER ("Schrier") is the Director of Behavioral Health at Medrite, located at 40 Fulton Street, 18th Floor, New York, New York 10038. At all relevant times, Schrier was an employer within the meaning of the NYCHRL and an agent of Medrite, acting within the scope of his employment. Schrier is sued individually and in his official capacity.

19. At all times material hereto, as the "Director of Behavioral Health" Defendant Schrier asserted supervisory authority over Plaintiff. In this role, Defendant Schrier maintained control over Plaintiff, including the ability to hire, fire, adjust hours, reprimand, promote, and/or demote Plaintiff.

20. At all times material, Salman Ahmad ("Ahmad") is the Chief Executive Officer and/or HR Director of Medrite. At all relevant times, Ahmad was an employer within the meaning of the NYCHRL and an agent of Medrite, acting within the scope of his employment.
21. At all times material hereto, as the "Chief Executive Officer and/or HR Director" Ahmad asserted supervisory authority over Plaintiff. In this role, Defendant Ahmad maintained control over Plaintiff, including the ability to hire, fire, adjust hours, reprimand, promote, and/or demote Plaintiff.
22. At all times material, Defendants Schrier and Ahmad are believed to be individual heterosexual males.
23. Each Defendant sued in this action has acted, in all respects pertinent to this action, as the other Defendant's agent, and has carried out a joint scheme, enterprise, business plan, or policy in all respects pertinent hereto. The acts of each Defendant are therefore legally attributable to the other Defendant(s).

## STATEMENT OF FACTS

24. In or around November 2023, Plaintiff Rahmeane Greer began working as a caseworker at Medrite's emergency shelter located at 235-69 Hillside Avenue, Queens Village, New York 11426. Plaintiff's formal payroll employer was Staffing Boutique Inc., which placed Plaintiff at Medrite pursuant to a staffing agreement.
25. Plaintiff is an openly gay man pursuing a career in social work. He viewed the caseworker position as valuable professional experience working with a vulnerable immigrant population and was committed to his work assisting recently arrived asylum seekers with accessing shelter services and support.

26. From the outset of his employment, Plaintiff experienced a pattern of discriminatory and homophobic mistreatment at the hands of Senior Caseworker "Mohsin" (last name unknown), who worked weekends at the Queens Village facility.

27. By means of example and in no way meant to be an exhaustive list, Mohsin would routinely ostracize Plaintiff. Mohsin refused to permit Plaintiff to sit beside him in the open desk area where both individuals were assigned to work. Mohsin permitted all other caseworkers, including heterosexual employees, to sit in the same area without restriction, with the sole exception of Plaintiff.

28. Furthermore, Mohsin refused to permit Plaintiff to eat food at his workstation while freely permitting heterosexual coworkers to do so.

29. Mohsin consistently addressed Plaintiff in a tone and manner expressing dislike, contempt, and outright disdain. To be clear, Mohsin did not address Plaintiff's heterosexual coworkers in a similar manner.

30. Plaintiff did his best to tolerate Mohsin's conduct because Mohsin worked only on weekends when another supervisor was generally present during Plaintiff's shifts, allowing Plaintiff to limit his direct interactions with Mohsin. Plaintiff generally felt safe as a result of the second supervisor being present as a buffer.

31. Project Manager Edith (last name unknown), a supervisor above Mohsin in Medrite's corporate hierarchy, was aware of Mohsin's history of openly homophobic behavior and later acknowledged this awareness to Plaintiff on or around the evening of March 17, 2024. Defendants' management thus had actual notice of Mohsin's homophobic conduct and failed to investigate, discipline, or remediate it. To be clear, this pattern of hostility and open homophobic harassment persisted for over four months without any corrective action.

32. On or about March 17, 2024, at approximately 4:00 P.M., Plaintiff was eating at his desk when Mohsin approached him and aggressively demanded that Plaintiff eat his food in the break room instead. Plaintiff scared as a result of the outburst, instead put his food away and continued working.

33. At approximately 7:00 P.M. that same evening, Plaintiff went to the break room to eat. Upon entering, Plaintiff encountered three individuals who were drinking alcoholic beverages. Plaintiff sat down and began eating his meal.

34. While Plaintiff was eating, two of the three individuals left the break room, leaving Plaintiff alone with a male coworker known to Plaintiff as "Junior" (true/legal name unknown) a caseworker also employed at Medrite's Queens Village facility.

35. Once alone with Plaintiff, Junior closed and secured the door to the break room, physically trapping Plaintiff inside.

36. Junior then forcibly kissed Plaintiff on the mouth. The kiss was entirely without Plaintiff's consent, was unwelcome, and was not invited or solicited by Plaintiff in any manner.

37. Plaintiff immediately pushed Junior away in order to stop the assault, making clear by his physical reaction that the contact was unwelcome and non-consensual.

38. After being pushed away, Junior exposed his erect penis to Plaintiff and attempted to solicit sexual intercourse from Plaintiff using crass and vulgar language. Plaintiff had no desire whatsoever to engage in sexual conduct with Junior.

39. Plaintiff was in shock. He felt trapped, humiliated, and violated. The closed door prevented Plaintiff from freely exiting the break room, and Plaintiff felt physically constrained by Junior's presence and conduct.

40. Mohsin then opened the break room door, observed Junior and Plaintiff inside, and immediately turned and departed without intervening or assisting Plaintiff.

41. Junior then left the break room. Plaintiff exited as well, went outside Defendants' facility, and attempted to collect himself following the trauma of having been sexually assaulted by a coworker on Defendants' premises.

42. Immediately following the assault, Plaintiff reported what had happened to Carla (last name unknown), a Senior Caseworker who was on duty at the facility that evening. Plaintiff also telephoned China (last name unknown), another Senior Caseworker, and reported the assault to her as well.

43. Plaintiff then reported the sexual assault in full detail to Project Manager Edith. Plaintiff explained: (a) that he had walked into the break room and found three people drinking alcoholic beverages; (b) that Junior had sexually assaulted him after the other two individuals left; (c) that Mohsin had witnessed the scene in the break room; and (d) that Plaintiff was concerned about Mohsin's reaction given his pattern of homophobic behavior toward Plaintiff.

44. Edith acknowledged Mohsin's homophobic conduct, confirming that she was personally aware of his history of openly homophobic behavior at the workplace. Edith requested that Plaintiff prepare a written statement about the assault, which Plaintiff did. Plaintiff then completed his shift and left the facility.

45. The following day, Defendants emailed Plaintiff notifying him that he was suspended pending an investigation of the incident. Plaintiff was in shock: how was it possible that he, the victim of the assault, was being restricted from the ability to work and provide for his family, while as those responsible for traumatizing him could freely engage as though nothing had happened?

46. Shortly thereafter, Defendants' Director of Behavioral Health, Christopher Figueroa-Schrier, sent Plaintiff an email, copying Chief Executive Officer Salman Ahmad, Project Manager Edith, and others, in which he expressly stated: "Thank you for escalating this and yes, this behavior is unacceptable. We will open an investigation." This written acknowledgment by a senior Medrite official constitutes an express admission that the conduct complained of was wrongful and that Defendants assumed an obligation to investigate.

47. In reply, Plaintiff reported to Schrier, Ahmad, and other supervisors an additional harm: Senior Caseworker Mohsin had approached other caseworkers and disclosed the details of the March 17 incident to them without Plaintiff's knowledge or consent, thereby humiliating Plaintiff before his coworkers and compounding the harm caused by the original assault.

48. Plaintiff subsequently spoke with Jodie (last name unknown), the Head of Defendants' Human Resources Department, regarding the investigation and the assault.

49. Upon information and belief, prior to or during Defendants' purported investigation, Junior separately contacted and communicated with Defendant Salman Ahmad, Medrite's Chief Executive Officer, concerning the events of March 17, 2024. This ex parte communication between the alleged perpetrator and the CEO, occurring outside of any formal investigative process and without Plaintiff's knowledge, tainted the investigation and contributed to the retaliatory decision to terminate Plaintiff.

50. Approximately twelve (12) days after the assault, Plaintiff received a telephone call from an unidentified female representative of Defendants who informed Plaintiff that he was being terminated immediately.

51. Defendants issued Plaintiff a formal termination letter dated March 29, 2024. The letter states that Plaintiff's "last day of work was the 17th of March 2024," the very day of the assault and Plaintiff's report.

52. At no time prior to his termination did Defendants provide Plaintiff with any findings from the promised investigation, or any progressive discipline consistent with any workplace policy.

53. Upon information and belief, Junior was not subject to any corrective action for his unlawful, and outright criminal conduct.

54. On or around March 17, 2024, Defendants wrongfully and unlawfully terminated Plaintiff. Defendants wrongfully terminated Plaintiff because of her sex/gender and sexual orientation and in retaliation for his exercise of protected activity/complaint of unlawful activity in violation of state and federal law.

55. As a direct and proximate result of the sexual assault, the hostile work environment, and Defendants' discriminatory and retaliatory termination, Plaintiff's preexisting conditions have been materially aggravated and exacerbated. Plaintiff has suffered and continues to suffer severe emotional distress, including extreme anxiety, depression, and trauma symptoms attributable to the assault and to the indignity of being terminated as a victim of sexual harassment.

56. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered financial hardship, including the loss of wages, salary, benefits, and other compensation, in an amount to be determined at trial.

57. Plaintiff claims a continuous practice of discrimination and claims a continuing violation and makes all claims herein under the continuing violations doctrine.

58. Plaintiff claims that Defendants discriminated against and retaliated against Plaintiff because of his sex/gender and sexual orientation and because he complained or opposed the unlawful conduct of Defendants.

59. Plaintiff claims unlawful constructive and/or unlawful actual discharge and also seeks reinstatement.

60. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages against Defendants, jointly and severally.

61. The events described above are just some of the examples of unlawful discrimination and retaliation Defendants subjected Plaintiff on a continuous and on-going basis throughout their employment.

**AS A FIRST CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER NEW YORK STATE LAW**
**N.Y. Exec. Law § 296(1)(a)**
**Sexual Orientation & Sex Discrimination – Disparate Treatment**

62. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

63. New York State Executive Law § 296(1)(a) makes it an unlawful discriminatory practice for an employer, because of an individual's sexual orientation or sex, to discharge from employment such individual or to discriminate against such individual in terms, conditions, or privileges of employment.

64. Plaintiff is a gay man and is therefore a member of protected classes based on both his sexual orientation and his sex.

65. Defendants subjected Plaintiff to discriminatory treatment on the basis of his sexual orientation and sex, including by tolerating and perpetuating a pattern of homophobic mistreatment, facilitating the conditions that led to Plaintiff's sexual assault, and ultimately terminating Plaintiff's employment on a pretextual basis while the perpetrator suffered lesser or no consequence.

66. Plaintiff was treated less favorably than his similarly situated heterosexual coworkers in the terms, conditions, and privileges of his employment, and was terminated under circumstances giving rise to a strong inference of sexual orientation and sex-based discrimination.

67. Defendant Medrite terminated Plaintiff's employment on or about March 29, 2024, effective March 17, 2024.

68. As a direct and proximate result of Defendants' discriminatory conduct in violation of New York State Executive Law § 296(1)(a), Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits. Plaintiff has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Plaintiff accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

69. Defendants' actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff's rights under New York State Executive Law § 296(1)(a), warranting the imposition of punitive damages in addition to compensatory damages.

70. Plaintiff further requests that his attorneys' fees and costs be awarded as permitted by law.

## AS A SECOND CAUSE OF ACTION
## FOR HOSTILE WORK ENVIRONMENT UNDER NEW YORK STATE LAW
## N.Y. Exec. Law § 296(1)(h)

71. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

72. New York State Executive Law § 296(1)(h), as amended, prohibits an employer from subjecting an individual to harassment because of the individual's sex or sexual orientation. Under the 2019 amendments to the NYSHRL, it is sufficient that the conduct subjected Plaintiff to inferior terms and conditions of employment.

73. Plaintiff was subjected to an ongoing hostile work environment based on his sexual orientation and sex, including: (a) Mohsin's sustained pattern of homophobic exclusion and disdain; (b) management's actual knowledge of and failure to remediate Mohsin's homophobic conduct; (c) the sexual assault perpetrated by Junior on March 17, 2024; (d) Mohsin's unauthorized disclosure of the assault to Plaintiff's coworkers; and (e) the systematic failure of Defendants to conduct a genuine investigation or provide any protective remedy to Plaintiff.

74. Defendants had actual and/or constructive knowledge of the hostile work environment yet failed to take prompt corrective action.

75. Defendants failed to exercise reasonable care to prevent and correct the harassing conduct in the workplace by, among other things: (a) failing to establish or enforce effective anti-harassment policies; (b) failing to discipline Mohsin for known homophobic conduct; (c) failing to conduct a prompt, thorough, and impartial investigation of Plaintiff's assault complaint; and (d) permitting the consumption of alcohol on the premises.

76. As a direct and proximate result of the hostile work environment, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and

back pay) and lost benefits, as well as emotional distress, mental anguish, loss of dignity, and other intangible damages.

77. Defendants' actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff's rights under N.Y. Exec. Law § 296(1)(h), warranting the imposition of punitive damages in addition to compensatory damages.

78. Plaintiff further requests that his attorneys' fees and costs be awarded as permitted by law.

**AS A THIRD CAUSE OF ACTION**
**FOR RETALIATION UNDER NEW YORK STATE LAW**
**N.Y. Exec. Law § 296(1)(e)**

79. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

80. New York State Executive Law § 296(1)(e) makes it unlawful for an employer to discharge or otherwise discriminate against any person because he has opposed any practices forbidden under the NYSHRL. New York State Executive Law § 296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he has opposed any practices forbidden under this article."

81. Plaintiff engaged in protected activity under the NYSHRL on multiple occasions, including by: (a) reporting the sexual assault to Senior Caseworker Carla on the evening of March 17, 2024; (b) reporting the assault to Senior Caseworker China; (c) reporting the assault and Mohsin's history of homophobic conduct to Project Manager Edith; (d) preparing and submitting a formal written statement about the assault; (e) speaking with Jodie, Medrite's Head of Human Resources; and (f) reporting to Schrier, Ahmad, and other management the additional harm caused by Mohsin's unauthorized disclosure.

82. In direct response to Plaintiff's protected complaints, Defendants suspended Plaintiff the day after he made his report, and then terminated his employment on or about March 29, 2024, on the pretextual ground that Plaintiff had been drinking on the job.

83. The temporal proximity between Plaintiff's protected activity and Defendants' adverse employment actions, combined with the pretextual nature of the stated reason for termination, evidences retaliatory motive.

84. Any reasonable employee in Plaintiff's position would be dissuaded from reporting workplace discrimination and harassment if they knew they would be subjected to the treatment Plaintiff endured.

85. As a direct and proximate result of Defendants' retaliatory conduct in violation of N.Y. Exec. Law § 296(1)(e), Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits, as well as emotional distress, mental anguish, loss of dignity, and other intangible damages.

86. Defendants' actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff's rights under N.Y. Exec. Law § 296(1)(e), warranting the imposition of punitive damages in addition to compensatory damages.

87. Plaintiff further requests that his attorneys' fees and costs be awarded as permitted by law.

**AS A FOURTH CAUSE OF ACTION**
**AIDING AND ABETTING UNDER NEW YORK STATE LAW**
**N.Y. Exec. Law § 296(6)**

88. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

89. New York State Executive Law § 296(6) provides that "It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so."

90. Defendants engaged in an unlawful discriminatory practice by aiding, abetting, compelling, and/or coercing the discriminatory and retaliatory conduct described herein. The individual Defendants Schrier each aided and abetted the discriminatory and retaliatory conduct described herein by participating in, directing, ratifying, or failing to prevent the unlawful employment actions taken against Plaintiff.

91. Defendants violated the above and Plaintiff suffered numerous damages as a result.

**AS A FIFTH CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER**
**THE NEW YORK CITY ADMINISTRATIVE CODE**
**N.Y.C. Admin. Code § 8-107(1)(a)**
**Sexual Orientation & Sex Discrimination – Disparate Treatment**

92. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

93. The Administrative Code of City of NY § 8-107(1)(a) provides that "It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

94. Under the NYCHRL, Plaintiff need only show that his protected characteristic, sexual orientation and/or gender, played a role in Defendants' conduct. The NYCHRL does not

employ the McDonnell Douglas burden-shifting framework; instead, Defendants must demonstrate that the challenged conduct was justified.

95. Plaintiff is a gay man and is therefore a member of protected classes under the NYCHRL based on his sexual orientation and gender.

96. Defendants, individually and as employers and agents, discriminated against Plaintiff because of his sexual orientation and gender by subjecting him to a homophobic hostile work environment, tolerating the sexual assault perpetrated upon him, failing to investigate or remediate his complaints, and terminating his employment on a pretextual basis.

97. The individual Defendant Schrier is personally liable under the NYCHRL as an employer and/or agent who participated in, aided, abetted, or were responsible for the discriminatory conduct and the termination decision.

98. As a direct and proximate result of Defendants' discriminatory conduct in violation of the Administrative Code of City of New York, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits, as well as emotional distress, mental anguish, loss of dignity, and other intangible damages. Plaintiff accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

99. Defendants' actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff's rights under the Administrative Code of City of New York, warranting the imposition of punitive damages.

100. Plaintiff further requests that his attorneys' fees and costs be awarded pursuant to N.Y.C. Admin. Code § 8-502(f).

**AS A SIXTH CAUSE OF ACTION**
**FOR HOSTILE WORK ENVIRONMENT UNDER**
**THE NEW YORK CITY ADMINISTRATIVE CODE**
**N.Y.C. Admin. Code § 8-107(1)(a)**

101. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

102. The NYCHRL imposes the most plaintiff-protective standard for hostile work environment claims. Under the NYCHRL, Plaintiff need only show that he was treated less well than other employees because of his sexual orientation and/or gender.

103. As set forth in the Statement of Facts above, Defendants subjected Plaintiff to a pervasive hostile work environment based on his sexual orientation and sex, including Mohsin's sustained homophobic conduct, the sexual assault perpetrated by Junior, the failure to investigate, and the subsequent retaliation.

104. The individual Defendant Schrier bears individual liability under the NYCHRL for his role in creating, perpetuating, and failing to remediate the hostile work environment.

105. As a direct and proximate result of the hostile work environment created by the Defendants, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits, as well as emotional distress, mental anguish, loss of dignity, and other intangible damages.

106. Defendants' actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff's rights, warranting punitive damages.

107. Plaintiff further requests that his attorneys' fees and costs be awarded pursuant to N.Y.C. Admin. Code § 8-502(f).

**AS A SEVENTH CAUSE OF ACTION**
**FOR RETALIATION UNDER**
**THE NEW YORK CITY ADMINISTRATIVE CODE**
**N.Y.C. Admin. Code § 8-107(7)**

108. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

109. N.Y.C. Admin. Code § 8-107(7) makes it unlawful for any employer or person to retaliate or discriminate in any manner against any person because such person has opposed any unlawful practice prohibited by the NYCHRL or made a charge of discrimination.

110. As set forth above, Plaintiff engaged in protected activity under the NYCHRL by reporting the sexual assault and Mohsin's homophobic conduct to multiple supervisory personnel within Defendants' organization.

111. In retaliation for these protected complaints, Defendants suspended and then terminated Plaintiff's employment within twelve days of his complaints, on the pretextual basis of "drinking on the job."

112. The individual Defendant Schrier is individually liable as a person who participated in, aided, and/or abetted the retaliatory termination decision.

113. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code § 8-107(7) by discriminating against Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

114. Defendants violated the above and Plaintiff suffered numerous damages as a result.

[*Purposefully continued on next page*]

**AS AN EIGHTH CAUSE OF ACTION**
**AIDING AND ABETTING UNDER**
**THE NEW YORK CITY ADMINISTRATIVE CODE**
**N.Y.C. Admin. Code § 8-107(6)**

115. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

116. The New York City Administrative Code Title 8, § 8-107(6) provides that it shall be an unlawful discriminatory practice: "For any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

117. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code § 8-107(6) by aiding, abetting, inciting, compelling, and coercing the above discriminatory, unlawful, and retaliatory conduct.

118. Defendants violated the above and Plaintiff suffered numerous damages as a result.

**AS A NINTH CAUSE OF ACTION**
**INTERFERENCE WITH PROTECTED RIGHTS UNDER**
**THE NEW YORK CITY ADMINISTRATIVE CODE**
**N.Y.C. Admin. Code § 8-107(19)**

119. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

120. Section 8-107(19), entitled Interference with protected rights, provides that "It shall be an unlawful discriminatory practice for any person to coerce, intimidate, threaten or interfere with, or attempt to coerce, intimidate, threaten or interfere with, any person in the exercise or enjoyment of, or on account of his or her having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected pursuant to this section."

121. Defendants violated the above section as set forth herein.

**AS A TENTH CAUSE OF ACTION**
**EMPLOYER LIABILITY UNDER**
**THE NEW YORK CITY ADMINISTRATIVE CODE**
**N.Y.C. Admin. Code § 8-107(13)**

122. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

123. Section 8-107(13) provides that an employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section, where: (1) the employee or agent exercised managerial or supervisory responsibility; or (2) the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; or (3) the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

124. Defendants Medrite and Staffing Boutique are directly and vicariously liable under this provision for the discriminatory, harassing, and retaliatory conduct of Mohsin, Junior, Schrier, Ahmad, and Jodie, each of whom was acting within the scope of his or her employment or agency.

125. Defendants violated the above section as set forth herein.

**INJURY AND DAMAGES**

As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of his career and the loss of a salary, bonuses, benefits and other compensation which such employment entails. Plaintiff has also suffered future pecuniary losses, emotional pain, physical pain, humiliation, mental anguish, suffering, inconvenience, injury to reputation, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

**JURY DEMAND**

Plaintiff requests a jury trial on all issues to be tried.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, including but not limited to all emotional distress and back pay and front pay, punitive damages, liquidated damages, statutory damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

Dated: March 18, 2026

**DEREK SMITH LAW GROUP, PLLC**
*Counsel for Plaintiff*

*/s/ Caroline H. Miller*
Caroline H. Miller, Esquire
Derek Smith Law Group, PLLC
450 Seventh Avenue, 30th Floor
New York, New York 10123
Tel: (786) 292-7605
E-Mail: *Caroline@dereksmithlaw.com*